# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LILLIAN BORICH ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 12 C 734 |
| v. ) | |
| ) | |
| LIFE INSURANCE COMPANY OF ) | Judge John J. Tharp, Jr. |
| NORTH AMERICA and BP LONG- ) | |
| TERM DISABILITY PLAN ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Lillian Borich alleges that defendant Life Insurance Company of North America ("LINA") wrongfully denied her long-term disability ("LTD") insurance claim. Borich brings suit under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking to recover LTD benefits, prejudgment interest, and attorneys' fees. Currently pending are threshold questions regarding the standard of review that the Court should employ in deciding Borich's claim and the scope of permissible discovery. For the reasons explained below, the de novo standard of review applies to this action, and Borich is entitled to discovery that directly relates to whether she is disabled under the terms of her LTD insurance policy (the "Policy"). However, Borich is not entitled to discovery relating to why LINA denied her claim or whether LINA faced a conflict of interest.

## BACKGROUND[1]

Borich was an employee of BP Corporation until January 13, 2008, when she ceased working due to medical impairments. LINA issued the Policy that funded BP's LTD insurance

---

[1] The following facts are taken from Borich's Statement of Material Facts (Dkt. 20). They are presented only as background information, and do not constitute findings of the Court.

plan (the "Plan"), which provides benefits to current and former BP employees, including Borich.

After Borich's employment concluded, she applied to LINA for disability benefits under the Policy. Like many LTD policies, the Policy contains a two-pronged definition of disability. For the first 24 months of a claimed disability, a claimant is considered to be disabled if she is unable to perform all of the material duties of her regular occupation at BP. After 24 months a more stringent test applies; a claimant is considered to be disabled only if she is unable to perform all the material duties of *any occupation* for which she may reasonably become qualified. LINA initially denied Borich's disability claim, but Borich successfully appealed the denial, and LINA paid her benefits effective July 14, 2008. In 2009, LINA notified Borich that it would terminate her benefits, but Borich again successfully appealed that decision, and LINA paid a total of 24 months of LTD benefits through July 13, 2010.

On October 13, 2010, LINA informed Borich that it would not pay any benefits beyond July 13, 2010, because Borich did not meet the more restrictive definition of "disabled" that took effect on that date. Borich again appealed LINA's denial of benefits, but on December 20, 2011, LINA upheld its denial, finding that Borich was not disabled. Borich filed this lawsuit on February 2, 2012. The parties have submitted briefs on the appropriate standard of review and scope of discovery.

## DISCUSSION

### I. Standard of Review

In ERISA cases, "a denial of benefits . . . is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case a deferential standard of

review is appropriate." *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 837 (7th Cir. 2012) (internal quotation omitted). But where a plan "clearly and unequivocally state[s] that it grants discretionary authority to the administrator," an arbitrary and capricious standard applies. *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 810 (7th Cir. 2006) (quoting *Perugini-Christen v. Homestead Mortg. Co.*, 287 F.3d 624, 626 (7th Cir. 2002)); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.").

### A. The Plan Grants LINA Discretionary Authority.

Borich argues that the Policy document itself does not grant discretionary authority to LINA. But LINA points to other plan documents that grant the insurer "the discretion to interpret the provisions of the Insurance Contract issued by such Insurer pertaining to the Benefits under the Benefit Program(s) provided by such Insurer." BP Consolidated Welfare Benefit Plan ("Consolidated Plan") (Dkt. 23-2) § 6.6. This Consolidated Plan language unequivocally grants discretionary authority to LINA, and is not rendered ineffective merely because it appears in plan documents other than the policy. *Marantz v. Permanente Med. Grp., Inc. Long Term Disability Plan*, 687 F.3d 320, 327 (7th Cir. 2012) ("A district court conducts de novo review of a denial of benefits under an ERISA plan unless the *plan documents* grant the claim fiduciary discretionary authority to construe the policy terms to decide eligibility for benefits . . . .") (emphasis added).

The Consolidated Plan became effective on April 1, 2011, however—that is, after Borich's employment ended and LINA initially denied her claim, but before LINA rejected her final appeal. Consolidated Plan at 1. The Seventh Circuit has held that "the controlling plan will

3

be the plan that is in effect at the time a claim for benefits accrues." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003). The question becomes, then, when Borich's claim accrued: on October 13, 2010, when LINA denied the continuation of her disability benefits pursuant to the post-two-year disability definition, or on December 20, 2011, when it denied her appeal?

The Seventh Circuit has stated that "a claim accrues at the time benefits are denied." *Id.* More specifically, "a claim to recover benefits under § 502(a) accrues upon a clear and unequivocal repudiation of rights under the pension plan which has been made known to the beneficiary." *Thompson v. Retirement Plan for Employees of S.C. Johnson & Son, Inc.*, 651 F.3d 600, 604 (7th Cir. 2011) (internal quotation omitted).

Judges in this district have interpreted this to mean that a plaintiff's "claim for denial of ERISA benefits accrue[s] . . . when her appeal [is] finally denied." *Peltzer v. Life Ins. Co. of N. Am.*, No. 01 C 2585, 2002 WL 1858786, *2 (N.D. Ill. Aug. 13, 2002); *see also Fleszar v. American Med. Ass'n*, No. 09 C 2247, 2010 WL 1005030, *7 (N.D. Ill. Mar. 11, 2010) ("claims for benefits accrue when the plan denies a formal appeal"); *Young v. Verizon's Bell Atl. Cash Balance Plan*, 667 F. Supp. 2d 850, 887 (N.D. Ill. 2009) ("an ERISA action logically accrues after the final administrative appeal is denied in writing"). And the Seventh Circuit has upheld that interpretation in at least one case, finding (albeit with only cursory analysis of the question) that a claimant does not receive a clear repudiation of a claim for benefits until the administrative appeal is denied. *Young v. Verizon's Bell Atl. Cash Balance Plan*, 615 F.3d 808, 816 (7th Cir. 2010). This interpretation makes especially good sense in a case like this one, where Borich twice successfully appealed LINA's initial denials of benefits. LINA did not clearly and unequivocally deny Borich's claim until it rejected her final appeal. Therefore, Borich's claim

4

accrued on December 20, 2011. Because the Consolidated Plan was in place on that date, it controls, and therefore the operative documents granted LINA discretion to interpret Policy provisions.

### B. Section 2001.3 Eliminates the Plan's Discretion-Conferring Language.

Though the plan documents grant LINA discretion, Borich argues that the discretionary language is trumped by 50 Ill. Admin. Code § 2001.3, which states:

> No policy, contract, certificate, endorsement, rider application or agreement offered or issued in this State, by a health carrier, to provide, deliver, arrange for, pay for or reimburse any of the costs of health care services or of a disability may contain a provision purporting to reserve discretion to the health carrier to interpret the terms of the contract, or to provide standards of interpretation or review that are inconsistent with the laws of this State.

If § 2001.3 applies, then the language granting discretion to LINA is of no effect, and Borich's claim should be reviewed de novo. *See Ehas v. Life Ins. Co. of N. Am.*, No. 12 C 3537, 2012 WL 5989215, *5 (N.D. Ill. Nov. 29, 2012) ("if Section 2001.3 applies, it strips the policy of its discretion-conferring language, and the standard of review reverts to de novo"); *Zuckerman v. United of Omaha Life Ins. Co.*, No. 09 C 4819, 2012 WL 3903780, *2 (N.D. Ill. Sep. 6, 2012) (finding that if § 2001.3 applies, then de novo review is appropriate); *Curtis v. Hartford Life & Accident Ins. Co.*, No. 11 C 2448, 2012 WL 138608, *10 (N.D. Ill. Jan. 18, 2012) (requiring de novo review where § 2001.3 invalidated discretionary clause).

LINA makes two arguments for why § 2001.3 should not apply, claiming (1) that the section does not apply to insurance plans, but only to insurance policies, and (2) that ERISA preempts the section. The Court rejects both arguments. First, § 2001.3 applies to plan documents like the Consolidated Plan. To hold otherwise would be both contrary to the plain language of the regulation and the clear import of that language. The regulation expressly applies not only to an insurance "policy" but also to a "contract, certificate, endorsement, rider

5

application or agreement." 50 Ill. Admin. Code § 2001.3; *see also Ehas*, 2012 WL 5989215 at *6. An employee benefit plan is a contract, *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009), and plainly falls within the scope of the regulation. Further, refusing to apply the regulation to the Consolidated Plan because it is not an insurance policy "is at odds with the 'common sense perspective,'" and would "elevate[] form over substance." *Ehas*, 2012 WL 5989215 at *6.* (internal quotations omitted). The regulation is written broadly to eliminate deference to an insurer's interpretation of policy language. The regulation's bar on insurer interpretive discretion would be meaningless, however, if it could be avoided by the expedient of entering into a separate agreement, outside the insurance policy, that provides the same discretion that § 2001.3 takes away. Therefore, like the other courts in this district to have addressed this question, the Court finds that § 2001.3 applies to employer-sponsored benefit plan documents. *Id.*; *Difatta v. Baxter Int'l, Inc.*, No. 12 C 5023, 2013 WL 157952, *3 (N.D. Ill. Jan. 15, 2013).

Second, ERISA does not preempt § 2001.3 because it falls within ERISA's "savings clause" as a state provision that "regulates insurance." 29 U.S.C. § 1144(b)(2)(A). To "regulate insurance" within the meaning of ERISA's savings clause, a state law must (1) "be specifically directed toward entities engaged in insurance" and (2) "substantially affect the risk pooling arrangement between the insurer and the insured." *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 342 (2003). LINA argues that if § 2001.3 applies to BP's plan documents then the section regulates employee benefits[2] rather than insurance, and that ERISA preempts

---

[2] LINA cites to three cases where courts ruled that ERISA preempted state laws affecting treatment of employee benefits, but each case involved legislation that sought to regulate employers' benefit obligations rather than the interpretation of an insurance policy. In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97 (1983) the Supreme Court invalidated a state law that "require[d] employers to pay employees specific [insurance] benefits." In *Retail Indus. Leaders*

6

regulations affecting employee benefits. In effect, LINA argues that § 2001.3 is not specifically directed toward entities "engaged in insurance." But like the other courts to have examined this issue, the Court finds that § 2001.3 is directed towards entities engaged in insurance because it directly impacts insurance policies and only incidentally affects trust documents and employers. *Ehas*, 2012 WL 5989215 at *8. Therefore, it falls within ERISA's saving clause and is not preempted. *See id.*; *Zuckerman*, 2012 WL 3903780 at *6-7; *Curtis*, 2012 WL 138608 at *10. Accordingly, the de novo standard of review applies in this case.

As a final note on this point, it should be pointed out that the term "de novo review" is a misnomer. In *Krolnik*, 570 F.3d at 843, the Seventh Circuit explained that, in this context, de novo review means that the court should make an independent decision. A court does not "review" the insurance company's decision, but rather takes evidence and "makes an independent decision about how the language of the contract applies to th[e] facts." *Id.*; *see also Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 643 (7th Cir. 2007) ("in these cases the district courts are not *reviewing* anything; they are making an independent decision about the employee's entitlement to benefits") (emphasis in original). Mindful of this directive, though it will continue to use the term "de novo review," the Court will make an independent decision whether Borich is or was disabled.

---

*Ass'n v. Fielder*, 475 F.3d 180, 197 (4th Cir. 2007) the court struck down a state law requiring employers to spend at least 8% of their total payrolls on employees' health insurance costs. And in *Unum Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 378-79 (1999) the Supreme Court rejected a state law that required the employer to act as agent of the insurer. Section 2001.3, on the other hand, has no direct impact on the employer or what benefits it must provide, but rather affects the way that the insurance policy is construed. Therefore the cases LINA cites are not persuasive.

**II.    Scope of Discovery**

In an ERISA benefit case, discovery is available to the extent that it enables the Court "to make an informed and independent judgment." *Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1099 (7th Cir. 1994). ERISA litigation "should be conducted just like contract litigation, for the plan and any insurance policy are contracts." *Krolnik*, 570 F.3d at 843. In deciding whether to allow discovery, many factors are relevant, "the most central being the court's need to hear the evidence in order to make an informed evaluation of the parties' claims and defenses." *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 490 (7th Cir. 2007). The Court has "discretion to limit the evidence to the record before the plan administrator, or to permit the introduction of additional evidence necessary to enable it to make an informed and independent judgment." *Id.* at 490 (internal quotations and alterations omitted).

Borich seeks to "take discovery pertaining to both the underlying merits of her claim and Defendants' conflict of interest." MSJ Br. (Dkt. 19) at 9. The former discovery is appropriate, but the latter is not. Taking the latter point first, whether LINA has a conflict of interest is simply irrelevant under de novo review. The Court's mission is to independently decide whether Borich is disabled under the terms of the Policy. Because the Court will not rely in any way on LINA's denial of benefits, whether LINA's decision was influenced by a conflict of interest has no probative value whatsoever. The Seventh Circuit made this point clear in *Diaz*, where it observed that because the district court was to make its own independent decision whether the petitioner was entitled to benefits, "[w]hat happened before the Plan administrator or ERISA fiduciary is irrelevant." 499 F.3d at 643. The question the court must decide is whether the plaintiff is entitled to the benefits she seeks, not whether the plan administrator gave her a full and fair hearing. *Id. See also, e.g., Walsh v. Long Term Disability Coverage for All Emps. Located in the*

*U.S. of DeVry, Inc.*, 601 F. Supp. 2d 1035, 1043 (N.D. Ill. 2009) (finding that any violations the plan administrator might have committed in denying an LTD claim were irrelevant to the question of whether a claimant is eligible for benefits).[3] Accordingly, discovery into LINA's decisionmaking process is barred.

But discovery into whether Borich is or was actually disabled under the Policy definition is appropriate and will be allowed. This includes discovery relating to any medical opinions in the administrative record on which LINA will rely to show that Borich is or was not disabled. From the discovery that she has propounded, it appears that Borich will attempt to show that the medical experts that LINA relied on in denying her claim were biased towards finding that she was not disabled because they were paid by LINA. Unlike an administrator's conflict of interest, a doctor's "potential bias is relevant to evaluating the credibility of his report," and the Court will have to consider those reports in deciding whether the plaintiff is disabled. *Shepherd v. Life Ins. Co. of N. Am.*, No. 11 C 3846, 2012 WL 379775, *4 (N.D. Ill. Feb. 3, 2012). In other words, the doctors' bias or conflict of interest could directly affect the Court's decision whether Borich is or was actually disabled. It would be unfair for the Court to allow LINA to rely on medical opinions without giving Borich the opportunity to seek discovery regarding those opinions and to discredit them if they are the product of bias. Further, if Borich wishes to affirmatively present evidence of her disability, she may do so. *See Krolnik*, 570 F.3d at 843. Evidence regarding Borich's disability will enable the Court to make an informed and independent judgment as to

---

[3] *Wise v. Life Ins. Co. of N. Am.*, No. 11 C 3429, 2012 WL 1203559, *3 (C.D. Ill. Apr. 10, 2012), which Borich cites in support of her claim for discovery, determined that "[e]vidence regarding conflicts of interest, however, would be irrelevant in a *de novo* review case because the Court reviews the matter without regard to the administrator's decision."

9

whether she is entitled to benefits. *Patton*, 480 F.3d at 490. Therefore the Court, in its discretion, will allow Borich to pursue discovery relating to her own disability status.

LINA argues that the Court should not allow Borich to take any discovery, even under de novo review. LINA references the factors listed in *Patton*, arguing that each factor weighs against allowing discovery. The *Patton* factors are (1) whether the evidence is necessary to enable the Court to make an informed and independent judgment, (2) whether the evidence relates to plan terms or historical facts concerning the claimant, (3) whether the plan administrator faced a conflict of interest, and (4) whether the parties had a chance to present their evidence in the administrative proceeding. *Id.* at 491. Here, the first and fourth factors weigh in favor of allowing discovery, while the second factor weighs against allowing discovery. The third *Patton* factor is not relevant to the question of whether Borich should be permitted to pursue discovery because the discovery sought regarding the medical experts goes to the question of the physicians' bias, not LINA's.

In deciding whether additional discovery should be permitted, "the most important factor" is whether the discovery is necessary to allow the court to make an informed and independent judgment. *Patton*, 480 F.3d at 491. LINA argues that additional evidence is not necessary for the Court to make an informed and independent judgment, explaining that the records and reports of at least five consulting and treating experts are available in the administrative record. Resp. Br. (Dkt. 27) at 12. But the Court must determine what weight to give those reports. LINA will surely argue that its experts rendered independent and accurate opinions, while Borich appears to contend that those experts are tainted by bias and conflict of interest. For the Court to make an informed judgment as to whether the reports are accurate,

Borich must have the opportunity to probe the biases of whichever experts LINA relies on, and therefore the first *Patton* factor weighs in favor of allowing discovery.

The fourth *Patton* factor weighs in favor of allowing discovery for much the same reason. The administrative process provided Borich no opportunity to obtain information relevant to the potential bias of the medical providers LINA retained, but even if she had been permitted to obtain and present such information, it seems unlikely that LINA would have found persuasive an argument that the medical experts it chose were biased because they were financially beholden to LINA.

The second *Patton* factor, by contrast, weighs slightly against allowing Borich to pursue discovery relating to the merits of her claim because in addition to seeking discovery regarding her doctors' alleged biases, Borich may seek additional information about her own medical history—a question that presumably she could have fully presented in connection with the adjudication of her claim to LINA. LINA maintains that Borich should be denied the opportunity to obtain additional evidence in order to further the goals of the administrative exhaustion doctrine, which requires ERISA claimants to exhaust internal remedies before seeking relief in court. But this argument is not compelling, particularly in a circumstance where the insurer initiated the claim review rather than the insured and in any event the case law, including *Patton,* clearly demonstrates that claimants may be entitled to additional discovery after the administrative process concludes. *See, e.g., Krolnik*, 570 F.3d at 843 (allowing discovery); *Patton*, 480 F.3d at 491-92 (allowing claimant to take discovery relating to his medical history); *Casey*, 32 F.3d at 1099 (explaining that district court may choose whether to allow discovery); *Shepherd*, 2012 WL 379775 at *3-4 (allowing discovery).

The Court therefore concludes that, taken together, the *Patton* factors confirm that Borich should be allowed to obtain discovery relating to the merits of her claim. Discovery is permitted to supplement the administrative record "where the benefits of increased accuracy exceed the costs." *Patton*, 480 F.3d at 492. LINA does not even argue that the costs of discovery into whether Borich is or was disabled exceed the benefits of that discovery. Though the record compiled during the administrative proceeding is extensive and might conceivably provide all of the necessary evidence about Borich's medical condition, it likely does not contain evidence of the medical providers' conflicts of interest, if any, and it seems unlikely that further discovery relating directly to her medical condition will be extensive. The Court will therefore permit discovery directly relating to the merits of her claim.

\* \* \*

For the reasons set forth above, the Court will review Borich's claim de novo. Borich is entitled to discovery that relates directly to whether she is or was disabled under the terms of the Policy. Borich is not entitled to discovery relating to the reasons why LINA denied her claim. If Borich chooses to conduct discovery, she should re-issue her requests to comply with this opinion.

Entered: April 25, 2013

_____
John J. Tharp, Jr.
United States District Judge